UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HOWARD LINDEN, as Personal
Representative of the Estate of
JEFFREY LITTLEJOHN,

       Plaintiff,                                  Case No. 1:13-CV-638

v.                                            HON. GORDON J. QUIST

CITY OF LANSING, a municipal
corporation, Officer SHIRLEY XIONG,
Officer DARRYL McCULLOUGH, and
Officer BRIAN RASDALE, individually
and in their official capacity, jointly and
severally,

       Defendants.
_____/

## OPINION GRANTING MOTION TO DISMISS

Plaintiff, the personal representative of the estate of Jeffrey Littlejohn, sued the City of Lansing and three Lansing Police Department officers following the death of Littlejohn. Plaintiff asserts claims under 42 U.S.C. § 1983 based on excessive force and deliberate indifference to Littlejohn's medical needs. Plaintiff also asserts state law claims based on negligence and intentional infliction of emotional distress (IIED). Defendants have moved to dismiss, arguing that they are entitled to qualified immunity.

**Background**

On April 30, 2011, Alisha Littlejohn called the Lansing police to report that her brother, Littlejohn, was acting strangely and she believed he might be suicidal. (Compl. ¶ 12.) Thereafter, police went to Ms. Littlejohn's home and arrested Littlejohn based on an outstanding warrant. (*Id.*

¶ 13.) On the way to the police station, the arresting officer noticed that Littlejohn was sweating profusely and slurring his words. (*Id.* ¶ 15.) Littlejohn told the officer that he had taken 8-9 Seroquel in order to sleep. (*Id.*) Following an inquiry from the officer, Littlejohn stated that he wanted to kill himself. (*Id.* ¶ 16.) The officer took Littlejohn to Sparrow Hospital for medical clearance. (*Id.* ¶ 17.)

After an evaluation at Sparrow Hospital, Littlejohn was taken to Community Mental Health Authority of Ingham County for psychiatric evaluation. (*Id.* ¶ 18.) Thereafter, Community Mental Health notified the Lansing Police that Littlejohn had left the premises, and police began searching for him. (*Id.* ¶¶ 19-20.) Around the same time, the Lansing Police received a 911 call reporting that an unknown individual, later determined to be Littlejohn, was banging on the doors of an apartment complex. (*Id.* ¶ 21.)

Following the call, Officer McCullough went to the apartment complex. (*Id.* ¶ 21.) Officer McCullough found Littlejohn outside one of the apartments. (*Id.* ¶ 22.) Littlejohn told Officer McCullough that he was having trouble breathing. (*Id.* ¶ 23.) Officer McCullough then handcuffed Littlejohn, led him away from the apartment, and sat him on the ground. (*Id.* ¶ 25.) As Littlejohn was sitting on the ground, his breathing began to slow. (*Id.* ¶ 26.)

Shortly thereafter, Officer Xiong arrived on the scene. (*Id.* ¶ 27.) Officers Xiong and McCullough searched for Littlejohn's pulse, and noticed that his breaths were becoming more far apart and labored. (*Id.*) Officer Rasdale then arrived on the scene. (*Id.* ¶ 28.) The officers did not remove Littlejohn's handcuffs. (*Id.* ¶¶ 27-29.) One of the officers said that Littlejohn was faking it and had been all day. (*Id.* ¶ 30.)

Shortly thereafter, in response to a call from the officers, Lansing Fire Department emergency medical technicians arrived on the scene. (*Id.* ¶ 31.) Plaintiff has not alleged that the

2

officers delayed in requesting assistance from the emergency responders. Emergency personnel put a blood pressure cuff on Littlejohn, and discovered that he was in cardiac arrest. (*Id.* ¶ 32.) They instructed the officers to remove the handcuffs so that they could perform CPR. (*Id.* ¶ 33.) After performing CPR, the Fire Department personnel took Littlejohn to Sparrow Hospital, where he was pronounced dead. (*Id.* ¶ 34.)

## Legal Standard

Government officials are entitled to qualified immunity for conduct in performing discretionary functions so long as the conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). To determine whether a government official is entitled to qualified immunity, the court must determine (1) whether a constitutional violation occurred; (2) whether the violation involved a clearly established right; and (3) whether the government official's actions were objectively unreasonable in light of clearly established law. *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). A qualified immunity determination should be made at the earliest point possible in a case. *Id.*

Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of showing that the defendant violated a clearly established right. *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right." *Id.* Although the precise action in question need not have been addressed in a previous case, the unlawfulness of the official's conduct must be apparent in light of existing law. *Feathers*, 319 F.3d at 848. "[A]n action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs." *Id.*

3

A municipality may be held liable for constitutional violations committed by its officers if a plaintiff can establish that "the municipality engaged in a 'policy or custom' that was the 'moving force' behind the deprivation of the plaintiff's rights." *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 609 (6th Cir. 2007) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978)). Municipal liability may be based on a failure to train if the failure amounts to deliberate indifference to the rights of persons with whom the officers come into contact. *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197 (1989). "To establish deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in [the] particular area of the law was deficient and likely to cause injury.'" *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). A municipality may not be held liable under § 1983 unless its officers committed a constitutional violation. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 900 (6th Cir. 2004).

## Discussion

The initial question concerns whether the Court may consider exhibits attached to Defendants' motion to dismiss, including police reports and an autopsy report. Plaintiff argues that these documents may not properly be considered, and that it would be improper to convert the motion to one for summary judgment without affording Plaintiff an opportunity for discovery. Plaintiff further argues that the motion to dismiss should be denied simply on the basis that the reliance on the exhibits "so permeates its presentation."

In reviewing a motion to dismiss under Rule 12(b)(6), a court ordinarily may not consider matters outside the pleadings. *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997). A court may, however, consider exhibits attached to the complaint, public records, and exhibits attached to the

motion to dismiss if they are referred to in the complaint and central to the plaintiff's claims. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011). "[I]n general, a court may only take judicial notice of a public record whose existence or contents prove facts whose accuracy cannot reasonably be questioned." *Passa v. City of Columbus*, 123 Fed. App'x 694, 697 (6th Cir. 2005).

Defendants argue that the exhibits, including the police reports, may be considered because they are public records and because Plaintiff appears to have relied on them in drafting the complaint. Most courts that have considered the issue have determined that police reports may not be considered as public records. *See e.g., Blackwell v. Kalinowski*, No. 08 C 7257, 2009 WL 1702992, at *2 (N.D. Ill. June 18, 2009) ("[T]he factual allegations contained in the police report do not become matters of public record suitable for consideration on a motion to dismiss."). Because Plaintiff could reasonably question the accuracy of the contents of the police reports, they are not the type of records of which the Court should take judicial notice. Furthermore, although language in the complaint is very similar to that contained in the police reports, the complaint does not specifically refer to the reports. Accordingly, the Court will not consider the reports attached to Defendants' motion at this point.

1. <u>Claims against individual defendants</u>

    a. Excessive Force

There is a clearly established Fourth Amendment right to be free from excessive force. *Neague v. Cynaker*, 258 F.3d 504, 507 (6th Cir. 2001). In evaluating a claim based on excessive force, the focus is on whether the conduct was "objectively reasonable." *Id.* (internal citations omitted). Although an excessive force claim may be premised upon handcuffing, "when there is no allegation of physical injury, the handcuffing of an individual incident to a lawful arrest is

insufficient as a matter of law to state a claim for excessive force under the Fourth Amendment." *Id.* at 507-08.

The basis for Plaintiff's excessive force claim is not entirely clear. Plaintiff cites cases in which an individual suffered a physical injury directly from the handcuffing, s*ee Walton v. City of Southfield*, 995 F.2d 1331, 1342 (6th Cir. 1993) (plaintiff had injured arm); *Martin v. Heideman*, 106 F.3d 1308, 1312-13 (6th Cir. 1997) (handcuffs were overly tight). However, Plaintiff does not allege that the officers were forceful in handcuffing Littlejohn. Rather, Plaintiff alleges that Littlejohn "attempt[ed] to save his own life and get up from the ground," and that the officers responded by "restraining him and refusing him the opportunity to breathe." (Compl. ¶ 29.) Plaintiff further elaborates in his response, alleging that Littlejohn suffered a "physical injury" when the officers' "restrained Littlejohn in a position restricting his ability to breathe, by keeping him seated on the ground with his arms handcuffed behind his back, and forced him to remain in that position" after he exhibited physical distress. (Pl.'s Resp. to Mot. to Dismiss at 15.) Thus, Plaintiff's claim appears to boil down to the following — Defendants made Littlejohn sit on the ground with his hands cuffed behind his back, and this exacerbated his breathing difficulties, thereby causing him to suffer physical harm.

Viewing the allegations in the light most favorable to Plaintiff, the officers' actions did not constitute excessive force. During the hours leading up to the incident, Littlejohn had used drugs, escaped from a mental health facility, and run around an apartment complex banging on doors. Given these events, it was reasonable for the officers to restrain him. *See Graves v. Bowles*, 419 Fed. App'x 640, 644 (6th Cir. 2011) (noting that, in determining that officer's use of force was reasonable, the plaintiff's use of drugs caused him to be "unpredictable"). Moreover, it is not alleged how Littlejohn's breathing trouble was exacerbated by being forced to sit with his hands behind his back (as opposed to running around the apartment complex banging on doors).

6

Even if the officers' actions violated Littlejohn's Fourth Amendment rights, such rights were not "clearly established." *See Wegener*, 933 F.2d at 392. Plaintiff has failed to provide any case law establishing or even suggesting a right to be free from restraint under similar circumstances. *See Rich v. City of Mayfield Heights*, 955 F.2d 1092, 1098 (6th Cir. 1992) ("While we recognize that there is no requirement that we rely upon a case in which the 'very action in question has been previously held unlawful' it is plaintiff's duty to establish 'in the light of pre-existing law, that the unlawfulness of the police officers' conduct was apparent.") (quoting *Andersen v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039(1989)). Thus, the unlawfulness of the officers' actions would not have been apparent. Accordingly, even if there was a constitutional violation, the officers are entitled to qualified immunity.

For the reasons discussed, the motion to dismiss the excessive force claim against the officers will be granted.

    b.    Failure to provide medical treatment

Plaintiff alleges that the officers were deliberately indifferent to Littlejohn's need for medical treatment.[1] A pretrial detainee may allege a cognizable claim for deliberate indifference to medical care when an official intentionally denies or delays access to medical care for a serious medical need. *Blackmore*, 390 F.3d at 895. Such a claim has both objective and subjective components. *Id.* Under the objective component, the plaintiff must demonstrate the existence of a "'sufficiently serious' medical need." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970, 1972 (1994)). The subjective component requires a plaintiff to demonstrate that a defendant perceived

---

[1] Although Plaintiff originally brought this as a claim under the Eighth Amendment, the parties agree that the claim should have been brought under the Fourteenth Amendment because Littlejohn was a pretrial detainee. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 2983 (1983) (holding that the Eighth Amendment proscription of cruel and unusual punishment does not apply to pre-trial detainees). The due process protections afforded to a pretrial detainee are analogous to those afforded to inmates under the Eighth Amendment. *Blackmore v. Kalamazoo County*, 390 F.3d at 895.

facts from which to draw an inference that a substantial risk of harm existed, that the defendant drew the inference, and that the defendant then disregarded the risk. *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

Plaintiff has satisfied the objective component of the test, since there was clearly a serious medical need. Plaintiff has failed, however, to sufficiently allege facts to satisfy the subjective component of the test. Even if the officers inferred that a substantial risk of harm existed based on the situation they perceived, there is no reason to believe that they disregarded the risk. Plaintiff argues that the facts alleged show that there was a serious medical need "necessitating prompt medical attention rather than having his hands cuffed behind his back, being forced to remain seated on the ground and being deprived of the opportunity to breathe freely . . ." Plaintiff does not allege, however, that the officers failed to seek prompt medical attention. Rather, Plaintiff apparently alleges that the mere act of handcuffing Littlejohn and forcing him to sit down constituted a disregard of his medical needs. These acts alone, however, do not indicate a disregard of Littlejohn's medical needs.

Even if the officers' actions violated Littlejohn's due process rights, such rights were not "clearly established." *See Wegener*, 933 F.2d at 392. Plaintiff has failed to provide any case law putting the officers on notice that their conduct was unlawful under the circumstances. Thus, it is unlikely that the unlawfulness of the officers' actions would have been apparent. Accordingly, even if there was a constitutional violation, the officers would be entitled to qualified immunity.

Accordingly, the Court will grant Defendants' motion to dismiss this claim.

c. State law claims

Plaintiff has alleged a claim for gross negligence and IIED. Plaintiff alleges that the officers' actions in handcuffing and restraining Littlejohn amounted to gross negligence. Michigan courts

8

have rejected attempts to transform claims of intentional torts, such as those based on excessive force, into claims of gross negligence. *VanVorous v. Burmeister*, 262 Mich. App. 467, 483, 687 N.W. 2d 132, 143 (2004). The cases cited by Plaintiff in which courts allowed plaintiffs to proceed with gross negligence claims in additional to intentional tort claims are distinguishable. *See Bland v. Dush*, No. 10-11046-BC, 2011 WL 833643 (E.D. Mich. March 4, 2011); *Bell v. Porter*, 739 F. Supp. 2d 1005 (W.D. Mich. 2005). *Bland* involved a "different factual situation" than normally presented in an excessive force case because there was a lack of evidence that one of the defendants actually struck the plaintiff. *Bland*, 2001 WL 833643 at *8. In *Bell*, the plaintiff alleged that the defendant breached duties that were independent and distinct from the allegations of excessive force. *Bell*, 739 F. Supp. 2d at 1015. In this case, however, Plaintiff's claim is "fully premised" on claims of excessive force and deliberate indifference, and thus does not state a claim for relief. *See id.*

A plaintiff pursuing a claim for IIED must demonstrate that the defendant engaged in extreme or outrageous conduct. *VanVorous*, 262 Mich. App. at 481, 687 N.W. 2d at 141. A plaintiff may not succeed in an IIED claim against a police officer if the officer's conduct was reasonable. *Vanvorous*, 262 Mich. App. at 482, 687 N.W. 2d at 142. Accordingly, because the Court finds that Defendants are entitled to qualified immunity, the IIED claim must necessarily fail.

2.  Claims against City (and officers in their official capacity)

Plaintiff has alleged that the City failed to adequately train or supervise its officers regarding excessive force and deliberate indifference. Plaintiff has failed to provide any detail as to how the City has failed to train or supervise; rather, Plaintiff's allegations are simply a reiteration of the standard for a failure to train claim. For instance, Plaintiff has failed to point to a single instance of unconstitutional conduct that would indicate a history of abuse. *See Miller*, 606 F.3d at 255. Accordingly, the Court will grant Defendants' motion to dismiss the claims against the City and the officers in their official capacity.

3. <u>Request to Amend</u>

Plaintiff has requested that, if the Court finds the factual allegations insufficient to establish liability on the part of the City, Plaintiff be permitted an opportunity to amend. Defendants argue that amendment would be futile. In an abundance of caution, this Court will allow Plaintiff to file an amended complaint within fourteen (14) days of the order dismissing this case. Defendants have fourteen (14) days to respond to any amended complaint. *See* Fed. R. Civ. P. 15(a)(3).


Dated:  December 30, 2013                        /s/ Gordon J. Quist
                                                            GORDON J. QUIST
                                                     UNITED STATES DISTRICT JUDGE